UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DAVID M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00083-JMS-DML |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff David M. applied for disability insurance benefits from the Social Security Administration ("SSA") on August 4, 2016, alleging an onset date of May 23, 2016. [Filing No. 13-2 at 16.] His application was initially denied on November 17, 2016, [Filing No. 13-4 at 2], and upon reconsideration on March 20, 2017, [Filing No. 13-4 at 7]. Administrative Law Judge Thuy-Anh T. Nguyen (the "ALJ") held a hearing on January 10, 2019. [Filing No. 13-2 at 37-72.] The ALJ issued a decision on March 28, 2019, concluding that David M. was not entitled to receive benefits. [Filing No. 13-2 at 13.] The Appeals Council denied review on March 12, 2020. [Filing

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

No. 13-2 at 2.]  On April 10, 2020, David M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g).  [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities."  *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months."  *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable

deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

David M. was 47 years of age at the time his alleged disability began. [*See* Filing No. 13-5 at 2.] He has completed high school and previously worked as a machinist in a factory for most of his adult life. [*See* Filing No. 13-6 at 4.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that David M. was not disabled. [Filing No. 13-2 at 29.] Specifically, the ALJ found as follows:

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, David M. had not engaged in substantial gainful activity[3] since May 23, 2016, the alleged onset date. [Filing No. 13-2 at 18.]

- At Step Two, he had the following severe impairments: "degenerative disc disease ('DDD'); status post lumbar discectomy and fusion; status post right shoulder repair surgery; and obesity." [Filing No. 13-2 at 18 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 19.]

- After Step Three but before Step Four, David M. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except only occasionally climbing ramps and stairs; but never climbing ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to vibration; he must avoid even moderate exposure to wetness and dangerous hazards; he is also further restricted to occasional overhead reaching with the dominant right upper extremity; he is further reduced to standing or walking for only 2 hours in an 8-hour workday and sitting for 6 hours in an 8-hour workday." [Filing No. 13-2 at 20.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering David M.'s RFC, he was incapable of performing his past relevant work as a machine setup operator. [Filing No. 13-2 at 27.]

- At Step Five, relying on VE testimony considering David M.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as a merchandise marker and inspector/hand packager. [Filing No. 13-2 at 27-28.]

### III.
### DISCUSSION

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

David M. asserts four errors, arguing that: (1) the ALJ did not review the relevant evidence concerning his exertional abilities in a balanced manner, (2) the ALJ improperly rejected the opinion of a consultative examiner, (3) the ALJ's subjective symptom evaluation was patently wrong, and (4) she did not meet her burden at Step Five to establish that work existed in the requisite economy.  The Court will address the arguments as necessary to resolve the appeal, beginning with an issue that is ultimately dispositive.

**A. Consultative Examiner's Opinion**

David M. contends that the ALJ did not provide a good explanation for discrediting the opinion of the consultative examiner, Kurt Jacobs, D.O., that he has moderate manipulative limitations.  [Filing No. 15 at 23-24.]  Specifically, he argues that the ALJ's rationale was problematic because she found "moderate" to be vague, despite regular use of the term by the SSA. [Filing No. 15 at 23-24.]  Further, David M. contends that the ALJ was required to seek clarification from the source.  [Filing No. 15 at 24.]

The Commissioner asserts that the ALJ did not need to contact the source concerning a "fingering" limitation because the regulatory requirement to do so is based on "evidentiary needs." [Filing No. 16 at 13-14.]  The Commissioner argues that there was no need to do so based on the record demonstrating that David M. had hand coordination sufficient for constant use, and the reviewing consultants' assessments finding no manipulative limitations.  [Filing No. 16 at 14.]

In his reply, David M. contends that the Commissioner's argument is contrary to the most applicable regulation and that it relies on inapposite case law pertaining to another regulation.

[Filing No. 17 at 7-9.] He contends further that the presence of conflicting medical evidence would not absolve, but rather would heighten, the need for clarification. [Filing No. 17 at 8.]

The Seventh Circuit has explained that "[a]s a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "But rejecting or discounting the opinion of the agency's own examining physician" that supports a finding of disability "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.* (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")).

On November 8, 2016, Dr. Jacobs examined David M. at the request of the SSA. [Filing No. 13-9 at 107-11.] David M.'s "chief complaints" were complications from a motorcycle accident, including a history of broken bones in his right arm for which a metal plate had been implanted. [Filing No. 13-9 at 107.] Dr. Jacobs found that David M.'s elbow reflexes were absent, range of motion was decreased in his right wrist, and his muscle strength was decreased at 4 out of 5 in his right shoulder, elbow, wrist, and grip. [Filing No. 13-9 at 109-10 (compared with full strength and range of motion in the left upper extremity).] Dr. Jacobs noted that "[g]ross motor movements are normal on a sustained basis. Claimant is able to button, zip, and pick up coins with moderate difficulty." [Filing No. 13-9 at 109.] Dr. Jacobs also noted in his medical source

statement that David M. was "able to handle objects with moderate difficulty." [Filing No. 13-9 at 109.]  Dr. Jacobs also gave the "impression" that David M. "suffer[ed] from right arm pain secondary to [a] motorcycle accident; it will probably not improve with time." [Filing No. 13-9 at 109.]

The ALJ explained that Dr. Jacobs's "opinion is not based solely on file review, it is based on a one-time examination rather than an opinion from a treating source/provider.  This is a one-time [snapshot] of this provider's opinion from 2016, rather than recent and/or consistent [with] treatment notes and analysis." [Filing No. 13-2 at 16.]  The ALJ also explained:

> This opinion includes vague subjective language ("moderate") that is not defined and subjective to the reader.  What is moderate to some may be "mild" to others.  Therefore, it is [difficult] to truly ascertain without additional context.  The remainder of Dr. Jacobs'[s] opinion regarding the claimant's ability to stand, walk, lift and carry is consistent with the record and supportive of the RFC.  Therefore, I give this opinion some weight.

[Filing No. 13-2 at 16.]

In an unpublished opinion, the Seventh Circuit found that a similar explanation was "perplexing." *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (citing *Beardsley*, 758 F.3d at 839).  The ALJ had explained that a consultative examiner's opinion was: (1) not consistent with the record, (2) disfavored for being based on a one-time examination despite the ALJ having given great weight to an opinion based on a one-time review that included the consultative examiner's findings, and (3) vague concerning specific functional limitations.  *Paul*, 760 F. App'x at 464.  There, the court found that the examination findings were consistent with the record.  *Id*.  It further

found that the ALJ should have contacted the source for additional clarification of the opinion before "discounting it outright." *Id*. (citing 20 C.F.R. § 416.919p[4] (additional citation omitted).)

Here, the ALJ's RFC finding did not include any limitations with David M.'s gross or fine manipulation with his dominant right hand, except that he could reach overhead only occasionally. [*See* Filing No. 13-2 at 42 (he testified he is right-handed)]; *see also Samuel S. v. Berryhill*, 2019 WL 168437, at *6-7 (S.D. Ind. Jan. 11, 2019) (collecting cases discussing terms used to describe hand functioning, as well as the definitions used by the Bureau of Labor Statistics that differentiate between the types of manipulative functions required in jobs: "fine manipulation" is defined as "[p]icking, pinching, or otherwise working primarily with fingers rather than the whole hand or arm as in gross manipulation," which is often referred to as fingering, as distinguished from "gross manipulation," sometimes referred to as handling, which is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand(s).  Note: Fingers are involved only to the extent that they are an extension of the hand.").

The Court shares the view of the *Paul* court that the ALJ's determination is perplexing that David M. would not have any manipulative limitations with the use of his right hand.  This conclusion is not supported by substantial evidence; at least, the ALJ does not marshal the relevant evidence in a way that demonstrates that the RFC is supported by the record.  The Commissioner

---

[4] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits.  Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type.  *See* 20 C.F.R. § 404.1519p.

contends that the relevant RFC finding is supported by evidence from two independent functional capacity evaluations that included reports designating that David M.'s "hand coordination" ability was sufficient for constant use, which is defined as more than two-thirds of an eight-hour workday. [Filing No. 16 at 14 (citing Filing No. 13-7 at 155 (examination performed March 14, 2016); Filing No. 13-7 at 161 (examination performed February 7, 2017)).]  The first evaluation occurred before David M.'s motorcycle accident and injury to his right arm, which coincides with his alleged onset date of May 23, 2016.  [See Filing No. 13-11 at 147 (David M. "sustained a right shoulder and elbow dislocation, radial head fracture, lateral collateral ligament tear, and subscapularis tear.  He underwent a radial head replacement and repair of the lateral collateral ligament and repair of the subscapularis tendon with shoulder reduction on 5/26/16.").]  The second functional capacity evaluation occurred after the injury.   However, that report also showed that the testing demonstrated that David M.'s hand grip and pinch grip with his right hand were reduced in force when compared to his left hand or the pre-injury testing of the same hand.  [See Filing No. 13-7 at 161, compared with Filing No. 13-7 at 155.]  The pre-injury report also shows that David M. had full strength and range of motion in his right elbow and wrist before the injury.  [Filing No. 13-7 at 157.]  However, the full report from the February 7, 2017 functional capacity evaluation shows that David M.'s range of motion and strength in his right shoulder, elbow, and wrist were all reduced when compared to the testing of his left upper extremity.  [Filing No. 13-9 at 119-20.]

At the time of the second functional capacity evaluation, David M. reported intermittent pain in his shoulder, rated as 3 out of 10, that increased to 7 of 10 "with most movements of his right arm."  [Filing No. 13-9 at 117.]  On November 14, 2018, during chiropractic treatment he

reported numbness and tingling in the fingers on his right hand.  [Filing No. 13-13 at 41.]  He also testified that he could not do much with the hand.  [Filing No. 13-2 at 43-44.]  He gave the example that using a screwdriver caused shooting pain.  [Filing No. 13-2 at 46.]

The state agency reviewing consultants' opinions were given "great weight."  [Filing No. 13-2 at 24.]  Neither of the verbatim assessments included limitations with manipulation or pushing and pulling of hand controls.  [Filing No. 13-3 at 6; Filing No. 13-3 at 16-17.]  The most recent review included Dr. Jacobs's consultative examination report.  [Filing No. 13-3 at 13.]  However, the consultant described the findings inaccurately as showing normal strength, grip, and fine finger manipulation skills.  [Filing No. 13-3 at 18.]

As detailed above, Dr. Jacobs indicated that David M. had moderate difficulties with manipulative skills commensurate with fine manipulation.  Dr. Jacobs's medical source statement also included an assessment that David M.'s ability to handle objects was moderately limited. Regardless of whether moderate can be considered a vague, subjective term when used by a consultative examiner selected by the SSA with presumed familiarity with its program and definitions, the term does not indicate that there would be no limitations with the relevant abilities.

The degree to which David M. could use his dominant right hand is of critical importance in evaluating his claim.  The ALJ found that he could not return to his long-time employment as a machinist.  The ALJ found the availability of two representative occupations at the light exertional level that David M. could perform based on testimony of the VE, who was given a description of an individual with the same limitations as David M.'s ultimate RFC.  [*See* Filing No. 13-2 at 60-62]; *see also Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on

testimony from a vocational expert, the hypothetical question [she] poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").  For example, the merchandise marker occupation includes duties that the worker "[t]ies, glues, sews, or staples price ticket to each article.  Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article." *Dictionary of Occupational Titles*, DICOT 209.587-034 (G.P.O. 1991), 1991 WL 671802.  Both representative occupations are considered light exertional work because:

> Physical demand requirements are in excess of those for Sedentary Work.  Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*See, e.g.*, *id*.  Here, only the latter two possibilities would apply because the VE was responding to a hypothetical that limited standing or walking to two hours in an eight-hour day and the VE testified that the occupations were "primarily done sitting down."  [Filing No. 13-2 at 62.] Accordingly, the occupations would entail pushing and/or pulling of arm or leg controls[5] or constant pushing and/or pulling of materials at a production pace.  Had light exertional work been precluded by David M.'s RFC, the Medical-Vocational Guidelines would have directed a finding of "disability" for the portion of the period under review when David M. was 50 or over.  [*See* Filing No. 13-2 at 63 (VE testified that David M. does not have skills transferable to sedentary exertional work)]; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.14 (individual closely

---

[5] David M. also has paresthesia in his left leg secondary to lumbar radiculopathy.  [Filing No. 13-7 at 23-24.]

approaching advanced age, high school education, with skilled or semiskilled work experience with no transferable skills); 20 C.F.R. § 404.1563(d) (individual "closely approaching advanced age" defined as ages 50-54).  The VE also testified in a somewhat convoluted manner as to the effect of the combined limitations that an individual who was further limited to occasional use of the right hand would not be able to perform any work.  [*See* Filing No. 13-2 at 68.]

There are aspects of Dr. Jacobs's report that are unclear.  Dr. Jacobs does not translate moderate difficulties into vocationally relevant functional terms concerning the degree of limitation.  The skills he described as being limited with testing are examples of fine manipulation.  However, the medical source statement limits David M.'s ability to "handle objects," [Filing No. 13-9 at 109], which is ambiguous as to whether Dr. Jacobs meant to refer to the type of objects that would be manipulated primarily by the fingers, *i.e.* fine manipulation, or to a separate difficulty with gross manipulation supported by some of the other examination findings.  For instance, as detailed above, David M. had limited reflexes, range of motion, and strength throughout his right upper extremity.  Consistent with *Paul*, the ALJ should not have used the ambiguity as a basis to eschew finding any manipulative limitations, because the most applicable regulation provides guidance that "[i]f the report is inadequate or incomplete, [the SSA] will contact the medical source who performed the consultative examination, give an explanation of [the SSA's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."  20 C.F.R. § 404.1519p.

Accordingly, remand is required to reconsider David M.'s RFC, his manipulative limitations, and the relevant medical opinions including Dr. Jacobs's opinion.

**B. Other Arguments**

Having found that remand is warranted based on David M.'s argument regarding the weight the ALJ gave the consultative examiner's opinion, the Court declines to analyze David M.'s remaining arguments. His statements concerning his subjective symptoms should be reevaluated in the context of his reconsidered RFC. Any potential error based on the ALJ's treatment of the evidence in the written decision or her finding that jobs were available in significant numbers in the requisite economy is rendered moot by the Court's order to vacate the ALJ's decision.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Daniel M. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 2/17/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

14